**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IMANI HAIGLER,** | : | |
| ***Plaintiff,*** | : | |
| | : | **Case No.:** |
| **v.** | : | |
| **HOMECENTRIS PENNSYLVANIA, LLC d/b/a HOMECENTRIS HEALTHCARE,** | : | |
| ***Defendant.*** | : | **JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Imani Haigler, by and through the undersigned counsel, HKM Employment Attorneys LLP, and, specifically, Justin M. Bahorich, Esquire, and Stephanie L. Solomon, Esquire, who files the within Complaint in Civil Action against Defendant, HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, of which the following is a statement:

## PARTIES

1. Plaintiff, Imani Haigler (hereinafter "Plaintiff" or "Ms. Haigler"), is an adult individual who currently resides at 2516 N. 33rd Street, Philadelphia, PA 19132.

2. Defendant, HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare (hereinafter "HomeCentris" or "Defendant"), is a limited liability company with a place of business located at Two Bala Plaza, Suite 300, Bala Cynwyd, PA 19004. HomeCentris is a home health care company that provides skilled nursing, therapy, personal care, and primary care services to individuals in their homes.

3. Upon information and belief, HomeCentris is affiliated with and managed through HomeCentris Healthcare, LLC, which maintains offices at 10 Crossroads Drive, Suite 110, Owings Mills, MD 21117. HomeCentris's Vice President of Operations and its Director of Human Resources, each of whom participated in the decisions described herein, worked from that location.

4. At all times relevant, HomeCentris employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the ADA, 42 U.S.C. § 12111(5).

5. At all times relevant, HomeCentris employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, and was a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611(4).

6. At all times relevant, HomeCentris was also an "employer" within the meaning of the PHRA, 43 P.S. § 954(b), in that it employed four (4) or more persons within the Commonwealth of Pennsylvania.

7. At all times relevant, Ms. Haigler was an "employee" of HomeCentris within the meaning of 42 U.S.C. § 2000e(f), 42 U.S.C. § 12111(4), 29 U.S.C. § 2611(3), and 43 P.S. § 954(c).

8. Ms. Haigler was employed by HomeCentris for more than two (2) years as a full-time salaried employee and worked at least 1,250 hours during the twelve-month period preceding her request for leave. Upon information and belief, HomeCentris employed fifty (50) or more employees within seventy-five (75) miles of Ms. Haigler's worksite; indeed, HomeCentris itself purported to compare Ms. Haigler's salary against those of its employees within seventy-five (75) miles of her worksite when it designated her a "key employee," as described below. Ms. Haigler

was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2). HomeCentris treated Ms. Haigler as FMLA-eligible and approved her request for FMLA leave.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over Ms. Haigler's federal claims pursuant to 28 U.S.C. § 1331, in that those claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII" — 42 U.S.C. §§ 2000e, *et seq.*), see 42 U.S.C. § 2000e-5(f)(3); the Americans with Disabilities Act of 1990, as amended ("ADA" — 42 U.S.C. §§ 12101, *et seq.*), see 42 U.S.C. § 12117(a); and the Family and Medical Leave Act of 1993 ("FMLA" — 29 U.S.C. §§ 2601, *et seq.*), see 29 U.S.C. § 2617(a)(2).

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Ms. Haigler's claims arising under the Pennsylvania Human Relations Act ("PHRA" — 43 P.S. §§ 951–963), in that those claims arise from the same nucleus of operative fact and form part of the same case or controversy as her federal claims.

11. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), in that HomeCentris maintains its Pennsylvania offices in this judicial district, including its office in Bala Cynwyd, Montgomery County, Pennsylvania, the unlawful employment practices alleged herein occurred in this judicial district, and HomeCentris's relevant employment records are maintained in this judicial district.

12. On or about May 28, 2025, Ms. Haigler filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Philadelphia District Office, alleging sex-based harassment and a hostile work environment, disability discrimination, and retaliation. EEOC Charge No. 530-2025-06535. The Charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

13. On July 16, 2025, HomeCentris submitted a Position Statement in response to the Charge. Ms. Haigler submitted a Rebuttal on October 1, 2025.

14. On or about September 8, 2026, the EEOC issued Ms. Haigler a Notice of Right to Sue. This Complaint is timely filed within ninety (90) days of Ms. Haigler's receipt of that Notice. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a).

15. More than one (1) year has elapsed since Ms. Haigler's complaint was dual-filed with the PHRC, and the PHRC has neither dismissed the complaint nor entered into a conciliation agreement to which Ms. Haigler is a party. Ms. Haigler is therefore authorized to bring her PHRA claims in this action. 43 P.S. § 962(c)(1).

16. Ms. Haigler has exhausted her administrative remedies, and all conditions precedent to the institution of this action have been satisfied.

## FACTUAL ALLEGATIONS

**a. Ms. Haigler excelled at HomeCentris and was on its leadership track.**

17. HomeCentris hired Ms. Haigler on or about December 8, 2022, as a Client Relationship Manager ("CRM"), working from its Bala Cynwyd office and the office HomeCentris refers to as the Vital Aid office.

18. In or around March 2024, HomeCentris promoted Ms. Haigler to Lead Client Relationship Manager ("Lead CRM"), with a salary increase of approximately $5,000.00 and a retention bonus of approximately $3,000.00.

19. In or around May 2024, HomeCentris selected Ms. Haigler to attend a leadership conference with its Pennsylvania and Maryland leadership. She was the only woman and the only CRM invited.

**b. HomeCentris's Human Resources Director spread a false rumor that Ms. Haigler earned her promotion through a sexual relationship with her supervisor.**

20. From approximately May 2024 through September 2024, HomeCentris's Human Resources Director, Sierra Morgan, told others in HomeCentris leadership that Ms. Haigler had received her promotion and pay increase because she was in a sexual relationship with her supervisor, Pennsylvania Agency Director Keon Ward.

21. The rumor was false. It attributed a woman's professional advancement to a sexual relationship with her male supervisor rather than to her work.

22. On or about September 16, 2024, Katonya Leach, a Human Resources employee who worked directly with Ms. Morgan, insisted on sitting beside Ms. Haigler to watch her work, followed her into a separate office when she tried to leave, closed the door, and blocked it, preventing Ms. Haigler from leaving until Mr. Ward arrived.

23. Ms. Haigler reported the incident to Mr. Ward in writing that day and forwarded her report to Vice President Jason Hafer, Mr. Ward's manager, on September 20, 2024.

24. On or about October 3, 2024, Ms. Haigler reported to Mr. Hafer and Mr. Ward, in writing, that Ms. Leach had told a coworker that Ms. Haigler was paid more because of a sexual relationship with Mr. Ward, and that Ms. Morgan had asked the same coworker what kind of relationship Ms. Haigler and Mr. Ward had.

25. On or about October 4, 2024, a coworker secretly recorded a private conversation with Ms. Haigler and circulated it to other employees in a group chat. Ms. Haigler reported the recording to Mr. Hafer and Ms. Morgan.

26. On or about October 10, 2024, a participant in the group chat acknowledged to Mr. Ward that the recording was made to portray Ms. Haigler and Mr. Ward as being in a sexual relationship.

27. On or about October 16, 2024, HomeCentris called Ms. Haigler into a meeting with Mr. Ward, Mr. Hafer, and Ms. Morgan — the source of the rumor — to address an accusation that Ms. Haigler had bullied a coworker. When Ms. Haigler asked about her own complaints, she was told that employee investigations do not have outcomes.

28. HomeCentris never interviewed Ms. Haigler about her complaints, never communicated any determination to her, and never disciplined anyone for the conduct she reported. HomeCentris has since acknowledged that its parent company decided on September 20, 2024, to terminate Ms. Morgan in part because of the issues Ms. Haigler raised, but it never told Ms. Haigler, and Ms. Morgan resigned before the termination took effect.

29. HomeCentris's written policies required it to perform "a thorough and objective investigation" of every harassment report and to communicate a determination "to the employee as soon as practical." Because the harassment originated in Human Resources, Ms. Haigler reported it to her supervisor and his manager, as those policies permit.

**c. HomeCentris granted Ms. Haigler's request to work from the Bala Cynwyd office only as a stopgap and never engaged in the interactive process.**

30. Ms. Haigler has anxiety and insomnia disorders that substantially limit major life activities, including sleeping, concentrating, and thinking. The harassment worsened her anxiety, and the Vital Aid office, where the harassment occurred, became a trigger for it.

31. On October 28, 2024, Ms. Haigler asked Mr. Ward in writing to work from the Bala Cynwyd office because of the anxiety caused by the environment at the Vital Aid office.

32. HomeCentris had previously offered her that option, and the Bala Cynwyd office had been her home office before HomeCentris acquired the Vital Aid operation.

33. Mr. Ward approved the request the same day, writing, "Approved to work out of Bala however we need a long-term solution so this may need to be revisited."

34. HomeCentris never proposed a long-term solution, never requested documentation, never offered an alternative accommodation, and never engaged Ms. Haigler in an interactive process, despite a written policy committing it to do so.

35. On or about November 6, 2024, Ms. Haigler overheard Mr. Hafer tell other employees, "I am worried about Imani. I asked her to come to Vital Aid today…she mentioned that Vital Aid is a trigger."

36. That day, Ms. Haigler emailed Mr. Ward to report the comment and again asked for a long-term solution, noting that HomeCentris allowed its Central Pennsylvania CRM to split time between its Harrisburg and York offices.

37. Working at the Vital Aid office was not an essential function of Ms. Haigler's position. Ms. Haigler had trained multiple CRMs who never reported to that office and fully performed their duties.

**d. HomeCentris pressured Ms. Haigler's supervisor to downgrade her review, then penalized her for working from the location it had approved.**

38. On or about November 8, 2024, two days after Ms. Haigler's latest report, Mr. Ward told her that leadership was pressuring him to give her a negative performance review, that he believed he would not receive a raise if he did not, and that leadership viewed her reports of retaliation unfavorably.

39. On or about December 9, 2024, Fermina Maddox joined HomeCentris as Regional Director, above Mr. Ward and reporting to Mr. Hafer.

40. On or about January 23, 2025, Mr. Hafer, Mr. Ward, and Ms. Maddox delivered Ms. Haigler's annual evaluation. Although presented as Mr. Ward's work, Mr. Hafer wrote it. It rated her "Sometimes Achieves Expectations," far below her 2023 evaluation.

41. The evaluation faulted Ms. Haigler for working from the approved location, stating that the team "is often heard telling clients and caregivers that Imani is not in the office" and that "[t]he role of Lead CRM requires presence for the team." It also recast the harassment she had reported as "personality conflicts."

42. Ms. Haigler responded, at the meeting and in writing, that her withdrawal resulted from the harassment and hostile work environment she had experienced. Mr. Hafer and Mr. Ward then described her complaints to Ms. Maddox, who said she had not previously known of them.

43. On or about February 10, 2025, Mr. Hafer told Ms. Haigler that, "[b]ased on this evaluation, a merit increase was not available at this time."

**e. HomeCentris responded to Ms. Haigler's FMLA request by warning that her job might not be waiting for her.**

44. On or about February 4, 2025, Ms. Haigler requested FMLA leave for her anxiety and insomnia from March 14, 2025, through April 28, 2025 — about six and one-half weeks.

45. On or about February 26, 2025, HomeCentris approved the leave but sent a Notification of Key Employee Status stating that, as a salaried employee among its highest paid ten percent (10%) within seventy-five (75) miles, Ms. Haigler might be denied restoration to her position. The notice addressed the specific leave she had requested and asserted that HomeCentris could not hire a temporary replacement.

46. The designation was baseless as Ms. Haigler earned approximately $55,000.00, and Mr. Ward and Ms. Maddox, who worked in her office, each earned substantially more.

47. Upon information and belief, she was not among HomeCentris's highest paid ten percent (10%) of employees within seventy-five (75) miles.

48. That same day, Ms. Maddox told Ms. Haigler that her job would be there if she came back but that Ms. Maddox did not believe she would, and asked her to train her replacement.

49. Ms. Maddox also told Ms. Haigler and Mr. Ward that HomeCentris had arranged for a staffing agency to supply a temporary replacement beginning March 3, 2025, contrary to the notice.

50. Also on February 26, 2025, in front of coworkers, Ms. Maddox called Ms. Haigler by a man's name, invoking Ike Turner, whom she described as known for having "a strong right hand" and for beating Tina Turner. When Ms. Haigler objected that she is a woman, Ms. Maddox feminized the name and kept using it.

51. Ms. Haigler challenged the Key Employee designation in writing that day. On March 3, 2025, HomeCentris issued a corrected approval without it. HomeCentris later told the EEOC it issued the notice only because Ms. Haigler sought twelve (12) weeks of leave; the notice itself refutes that account, since it addressed only the six and one-half weeks she had requested.

**f. HomeCentris fired Ms. Haigler eight days before her FMLA leave was to begin.**

52. On March 4, 2025, during a disagreement about canceling weekend services for a client, Ms. Maddox said, in front of the office, that Ms. Haigler was "fussing" and "storming out." Ms. Haigler reported the remarks to Mr. Ward in writing that day, told him she needed to work from home for the rest of the day because of her anxiety, and said she would coordinate her remaining days until her FMLA leave began. Mr. Ward agreed.

53. That afternoon, Ms. Maddox met with Mr. Hafer and Human Resources Director Gary Vornheder, then scheduled a meeting with Ms. Haigler for March 5, 2025. Ms. Haigler remained ill and worked from home on March 5, 2025, which Mr. Ward confirmed to Ms. Maddox.

54. On March 6, 2025, Ms. Maddox called Ms. Haigler and fired her. The termination letter cited "[j]ob abandonment or walking off the job during a work shift" on March 4, 2025, along with unspecified insubordination, poor performance, and parking tickets.

55. The termination came three (3) days after HomeCentris withdrew the key-employee designation, two (2) days after Ms. Haigler reported Ms. Maddox's remarks and worked from home for medical reasons, and eight (8) days before her FMLA leave was to begin.

**g. HomeCentris's stated reasons are pretextual.**

56. HomeCentris never disciplined Ms. Haigler before firing her.

57. HomeCentris paid Ms. Haigler for March 3, 4, 5, and 6, 2025, and its own employment verification form lists March 6, 2025, as her last day worked. It cannot pay her for those days and claim she abandoned her job on March 4.

58. HomeCentris did not fire a coworker who walked off her shift on September 20, 2024, after announcing she quit and did not return until September 23, 2024. HomeCentris disciplined that employee for job abandonment and kept her.

59. The poor-performance reason rests on the evaluation Mr. Ward said he was pressured to downgrade, which faulted Ms. Haigler for using an approved accommodation. The insubordination reason rests on the March 4 interaction in which Ms. Maddox made gendered remarks. The parking tickets were reported to Mr. Ward immediately and paid or disputed by HomeCentris's deadline.

60. HomeCentris's claim that Ms. Maddox decided alone and had no part in earlier events is false. Ms. Maddox attended the January 23, 2025 evaluation, learned of Ms. Haigler's complaints that day, questioned her about her FMLA leave, and asked her to train her replacement, and consulted Mr. Hafer and Human Resources before the termination.

61. At all relevant times, Ms. Haigler was qualified for her position and able to perform its essential functions with or without reasonable accommodation.

**COUNT I**
**HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX**
**IN VIOLATION OF TITLE VII**
**(*Plaintiff v. Defendant*)**

62. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

63. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

64. To establish a hostile work environment claim, a plaintiff must show that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). The standard is disjunctive; conduct need be only severe or pervasive. *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017).

65. Where the harasser is a co-worker, the employer is liable if it knew or should have known of the harassment and failed to take prompt and appropriate remedial action. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). Where a supervisor's harassment culminates in a tangible employment action, such as discharge, the employer is strictly liable. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

66. Title VII prohibits discrimination because of sex regardless of whether the harasser and the victim are of the same sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998).

67. Ms. Haigler is a woman and a member of a protected class under Title VII.

68. Ms. Haigler was subjected to unwelcome harassment because of her sex, including HomeCentris's Human Resources Director telling others in company leadership that Ms. Haigler had obtained her promotion and pay increase through a sexual relationship with her male supervisor; the Human Resources Director soliciting a coworker's views on the supposed relationship; a Human Resources employee repeating that claim to a coworker; a Human Resources employee locking Ms. Haigler in an office and physically preventing her from leaving; a coworker surreptitiously recording and circulating a private conversation for the purpose of portraying Ms. Haigler and Mr. Ward as being in a sexual relationship; Ms. Maddox addressing Ms. Haigler by a man's name and likening her to a man known for domestic violence, in front of other employees; and Ms. Maddox's gendered characterization of Ms. Haigler as "fussing" and "storming out."

69. Conduct of this kind is prohibited by HomeCentris's own written anti-harassment policy, which bars "[m]aking or using derogatory comments, epithets, slurs, sexually explicit jokes, or comments about an employee's body or dress," "impeding or blocking movements," and "blocking normal movement because of a protected status."

70. The harassment was severe or pervasive enough to alter the terms and conditions of Ms. Haigler's employment and to create an abusive working environment, both from Ms. Haigler's subjective perspective and from that of a reasonable person in her position. It caused her anxiety to worsen to the point that she required medical leave, and it derailed the leadership track she had been on.

71. HomeCentris knew of the harassment. Ms. Haigler reported it in writing to her direct supervisor and to his manager on multiple occasions beginning in September 2024, and HomeCentris's Human Resources Director, a management-level employee, was herself its source.

72. HomeCentris failed to take prompt and adequate remedial action. It imposed no discipline for the conduct Ms. Haigler reported, never interviewed Ms. Haigler, communicated no determination to her as its own policy required, told her that employee investigations do not have outcomes, seated the offending Human Resources Director in a disciplinary meeting against Ms. Haigler, and left Ms. Haigler to devise her own remedy by relocating to another office.

73. Because the harassment originated in the Human Resources department to which Ms. Haigler would otherwise have been required to report it, HomeCentris's complaint channel was compromised, and Ms. Haigler properly reported the conduct to her supervisor and his manager instead.

74. HomeCentris is also strictly liable for the harassment by Ms. Maddox, who was Ms. Haigler's second-level supervisor with authority to take tangible employment actions against her, and whose harassment culminated in Ms. Haigler's discharge.

75. HomeCentris acted intentionally, with malice, and with reckless indifference to Ms. Haigler's federally protected rights, entitling Ms. Haigler to punitive damages. 42 U.S.C. § 1981a(b)(1).

76. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has suffered damages, including lost wages, a lost merit increase, lost bonuses, lost benefits, lost employment opportunities, diminished earning capacity, emotional distress, anxiety, humiliation, embarrassment, inconvenience, and damage to her professional reputation, all in the past, present, and future.

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including back pay, front pay, compensatory damages, punitive

damages, injunctive and equitable relief, including reinstatement and correction of her personnel file, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**<u>COUNT II</u>**
**RETALIATION**
**IN VIOLATION OF TITLE VII**
**(*Plaintiff v. Defendant*)**

77. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

78. Title VII makes it unlawful for an employer to discriminate against any employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

79. To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). An action is materially adverse if it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

80. Opposition activity includes informal protests of discriminatory employment practices, including complaints to management. *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). Causation may be shown through unusually suggestive temporal proximity, a pattern of antagonism following the protected activity, or the evidence gleaned from the record as a whole. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).

81. Ms. Haigler engaged in protected activity under Title VII when she reported harassment in writing to Mr. Ward on September 16, 2024, and to Mr. Hafer on September 20, 2024; when she reported to Mr. Hafer and Mr. Ward on October 3, 2024, that Human Resources personnel were spreading a rumor that she had obtained her pay and promotion through a sexual relationship with her supervisor; when she reported the surreptitious recording and the continuing hostile environment on October 7 and October 28, 2024; when she renewed her complaint on November 6, 2024; when she told Mr. Hafer, Mr. Ward, and Ms. Maddox on January 23, 2025, in the meeting and in writing, that she had experienced harassment and a hostile work environment; and when she reported Ms. Maddox's gendered remarks to Mr. Ward on March 4, 2025.

82. HomeCentris subjected Ms. Haigler to materially adverse actions after and because of that protected activity, including subjecting her to a disciplinary meeting on October 16, 2024, at which the harasser was present; pressuring her supervisor to downgrade her performance review; downgrading her performance review on January 23, 2025; denying her a merit increase on the basis of that review; designating her a "key employee" under the FMLA; refusing to address the hostile environment she had reported; and terminating her employment on March 6, 2025.

83. A causal connection exists between Ms. Haigler's protected activity and the adverse actions. Mr. Ward told Ms. Haigler directly, on November 8, 2024 — two (2) days after her most recent report — that leadership was pressuring him to give her a negative review, and that leadership viewed her reports of retaliation unfavorably. HomeCentris then produced that negative review, used it to deny her a merit increase, and terminated her employment two (2) days after she reported Ms. Maddox's gendered remarks, at the direction of a manager who had learned of her complaints on January 23, 2025.

84. HomeCentris's stated reasons for terminating Ms. Haigler are pretextual for the reasons set forth above.

85. HomeCentris acted intentionally, with malice, and with reckless indifference to Ms. Haigler's federally protected rights, entitling Ms. Haigler to punitive damages. 42 U.S.C. § 1981a(b)(1).

86. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has suffered damages, including lost wages, a lost merit increase, lost bonuses, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and damage to her professional reputation, all in the past, present, and future.

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including back pay, front pay, compensatory damages, punitive damages, injunctive and equitable relief, including reinstatement and correction of her personnel file, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

## **COUNT III**
## **SEX DISCRIMINATION**
## **IN VIOLATION OF TITLE VII**
## **(*Plaintiff v. Defendant*)**

87. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

88. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

89. A plaintiff establishes a prima facie case of discriminatory discharge by showing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of unlawful discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999). At the pleading stage, a plaintiff need not plead a prima facie case, but need only allege facts sufficient to raise a reasonable expectation that discovery will reveal evidence of each element. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016).

90. A plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons that a reasonable factfinder could find them unworthy of credence. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

91. Ms. Haigler is a woman and a member of a protected class under Title VII.

92. Ms. Haigler was qualified for her position as Lead CRM. HomeCentris promoted her into that role, increased her salary, paid her a retention bonus, selected her to attend a leadership conference with Pennsylvania and Maryland leadership, and told her it approved of her interest in advancement.

93. HomeCentris subjected Ms. Haigler to an adverse employment action when it terminated her employment on March 6, 2025.

94. The circumstances of Ms. Haigler's discharge give rise to an inference of unlawful sex discrimination. HomeCentris's Human Resources Director told others in company leadership that Ms. Haigler had obtained her promotion and pay increase by having sex with her male

supervisor — a sex-based explanation for a woman's advancement that, upon information and belief, HomeCentris never applied to any male employee. A Human Resources employee repeated that explanation to a coworker. HomeCentris never corrected the record, never communicated any determination to Ms. Haigler, and never disciplined anyone for it.

95. Eight (8) days before Ms. Haigler was fired, the manager who fired her addressed her by a man's name in front of other employees, likened her to a man known for domestic violence, and persisted after Ms. Haigler objected that she is a woman. Two (2) days before Ms. Haigler was fired, that same manager described Ms. Haigler in gendered terms, stating that Ms. Haigler was "fussing" and "storming out" — language reflecting a sex-based expectation of how a woman in Ms. Haigler's position ought to conduct herself in a disagreement with a superior.

96. That the individuals who harassed Ms. Haigler and the individual who discharged her are themselves women does not defeat Ms. Haigler's claim. *Oncale*, 523 U.S. at 79–80.

97. HomeCentris's stated reasons for discharging Ms. Haigler — job abandonment, poor performance, insubordination, and parking tickets — are pretextual for the reasons set forth above, including that HomeCentris paid Ms. Haigler for every day it claims she abandoned her job, recorded March 6, 2025, as her last day worked, imposed no discipline on her at any time before firing her, retained an employee who actually walked off her shift and announced she was quitting, and departed from its own written complaint procedures.

98. HomeCentris acted intentionally, with malice, and with reckless indifference to Ms. Haigler's federally protected rights, entitling Ms. Haigler to punitive damages. 42 U.S.C. § 1981a(b)(1).

99. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has suffered damages, including lost wages, lost bonuses, lost benefits, lost employment opportunities,

diminished earning capacity, emotional distress, humiliation, embarrassment, inconvenience, and damage to her professional reputation, all in the past, present, and future.

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including back pay, front pay, compensatory damages, punitive damages, injunctive and equitable relief, including reinstatement and correction of her personnel file, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

## COUNT IV
## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE ADA
## (*Plaintiff v. Defendant*)

100. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

101. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

102. A disability includes a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life activities include sleeping, concentrating, and thinking, 42 U.S.C. § 12102(2)(A), and the definition of disability is to be construed in favor of broad coverage, 42 U.S.C. § 12102(4)(A).

103. To establish a prima facie case of disability discrimination, a plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

104. Ms. Haigler is an individual with a disability within the meaning of 42 U.S.C. § 12102. In the alternative, HomeCentris regarded her as having such an impairment, and she had a record of such an impairment.

105. Ms. Haigler was a qualified individual who could perform the essential functions of her position with or without reasonable accommodation.

106. HomeCentris took adverse employment actions against Ms. Haigler because of her disability, including downgrading her performance review on the express basis of the accommodation it had granted, denying her a merit increase on the basis of that review, designating her a "key employee" to signal that her position would not be preserved through medical leave, and terminating her employment on March 6, 2025.

107. Ms. Haigler was terminated approximately one (1) month after she disclosed her disability to HomeCentris in connection with her FMLA request, three (3) days after HomeCentris corrected the "key employee" designation, two (2) days after she told Mr. Ward she needed to work from home because of her anxiety, and eight (8) days before her disability-related leave was to begin.

108. HomeCentris acted intentionally, with malice, and with reckless indifference to Ms. Haigler's federally protected rights, entitling Ms. Haigler to punitive damages. 42 U.S.C. § 1981a(b)(1).

109. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has suffered damages, including lost wages, lost benefits, lost employment opportunities, diminished earning capacity, emotional distress, humiliation, embarrassment, and inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including back pay, front pay, compensatory damages, punitive damages, injunctive and equitable relief, including reinstatement and correction of her personnel file, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**COUNT V**
**FAILURE TO ACCOMMODATE AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE ADA**
**(*Plaintiff v. Defendant*)**

110. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

111. The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

112. To determine an appropriate reasonable accommodation, an employer may need to initiate an informal, interactive process with the employee. 29 C.F.R. § 1630.2(o)(3). An employer

that fails to engage in the interactive process in good faith is liable where (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Taylor*, 184 F.3d at 319–20.

113. HomeCentris had notice of Ms. Haigler's disability. She requested a change in work location on October 28, 2024, in writing, expressly because of the anxiety she suffered from the hostile work environment; she informed Mr. Ward on March 4, 2025, that she needed to work from home for medical reasons; and she submitted an FMLA request supported by a health care provider certification of her anxiety and insomnia.

114. Ms. Haigler requested reasonable accommodations, including a change in work location, permission to work remotely on days when her symptoms flared, and a period of medical leave.

115. HomeCentris granted the change in work location only as a stopgap, told Ms. Haigler that a long-term solution was needed, and then never proposed one. It never requested documentation in support of the request, never discussed alternative accommodations, never considered modifications to Ms. Haigler's duties or schedule, and never engaged Ms. Haigler in a good-faith interactive process — notwithstanding its own written policy committing it to do exactly that.

116. Ms. Haigler did not ask HomeCentris to insulate her from every coworker who caused her stress. She asked to work from a specific, existing HomeCentris office that had been her home office, that HomeCentris had previously offered to her, and from which HomeCentris

permitted her to work for months, while continuing to supervise and train CRMs and perform her duties. HomeCentris permitted another CRM to work on a hybrid basis between two offices.

117. Instead of accommodating Ms. Haigler, HomeCentris used the accommodation it had granted as the stated basis for downgrading her performance review, used that review to deny her a merit increase, and then relied on that review as a stated reason for her termination. HomeCentris then terminated Ms. Haigler days after she worked remotely for medical reasons with her supervisor's approval, and before her approved medical leave could begin.

118. Accommodating Ms. Haigler would not have imposed an undue hardship on HomeCentris. Ms. Haigler had trained multiple CRMs who performed the same duties without reporting to the Vital Aid office.

119. HomeCentris did not make a good faith effort to accommodate Ms. Haigler and acted with malice and reckless indifference to her federally protected rights. 42 U.S.C. § 1981a(a)(3), (b)(1).

120. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has suffered damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, and inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including back pay, front pay, compensatory damages, punitive damages, injunctive and equitable relief, including reinstatement and correction of her personnel file, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**COUNT VI**
**RETALIATION**
**IN VIOLATION OF THE ADA**
**(*Plaintiff v. Defendant*)**

121. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

122. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

123. A request for a reasonable accommodation is protected activity under the ADA. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003). To establish a prima facie case of retaliation, a plaintiff must show (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse action. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004).

124. Ms. Haigler engaged in protected activity under the ADA when she requested a change in work location as an accommodation on October 28, 2024; when she asked HomeCentris again on November 6, 2024, for a long-term solution; when she requested FMLA leave for her anxiety and insomnia on February 4, 2025; when she challenged the "key employee" designation on February 26, 2025; and when she requested to work from home for medical reasons on March 4, 2025.

125. HomeCentris subjected Ms. Haigler to materially adverse actions after and because of that protected activity, including the January 23, 2025 downgraded evaluation, the denial of a merit increase, the "key employee" designation, and her termination on March 6, 2025.

126. The temporal proximity between Ms. Haigler's protected activity and her termination — two (2) days after she requested to work from home for medical reasons and eight (8) days before her leave was to begin — together with HomeCentris's shifting and contradicted explanations, establishes a causal connection.

127. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has suffered damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, and inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including back pay, front pay, compensatory damages, punitive damages, injunctive and equitable relief, including reinstatement and correction of her personnel file, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**COUNT VII**
**INTERFERENCE**
**IN VIOLATION OF THE FMLA**
**(*Plaintiff v. Defendant*)**

128. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

129. The FMLA makes it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Interference includes "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

130. To state an interference claim, a plaintiff must establish that (1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) she was denied benefits to which she was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014). Terminating an employee for making a valid request for FMLA leave may constitute interference. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

131. An employer may deny restoration to a "key employee" — a salaried employee among the highest paid ten percent (10%) of the employees employed by the employer within seventy-five (75) miles of the employee's worksite — only where denial is necessary to prevent substantial and grievous economic injury to the employer's operations. 29 U.S.C. § 2614(b); 29 C.F.R. §§ 825.217–.218.

132. Ms. Haigler was an eligible employee, HomeCentris was a covered employer, and Ms. Haigler was entitled to FMLA leave for a serious health condition. Ms. Haigler gave HomeCentris notice of her intention to take FMLA leave, and HomeCentris approved her leave.

133. HomeCentris interfered with, restrained, and denied the exercise of Ms. Haigler's FMLA rights by designating her a "key employee" without a proper basis and informing her in writing that it could refuse to restore her to her position after leave, by telling her that it did not believe she would return and asking her to train her replacement, and thereby discouraging her from taking the leave to which she was entitled.

134. HomeCentris further interfered with Ms. Haigler's FMLA rights by terminating her employment three (3) days after it withdrew the erroneous designation and eight (8) days before

her approved leave was to begin, denying her the leave and the reinstatement to which she was entitled.

135. HomeCentris's interference was prejudicial to Ms. Haigler. She lost her leave, her position, her wages, and her benefits.

136. HomeCentris did not act in good faith or with reasonable grounds to believe its conduct was lawful, entitling Ms. Haigler to liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(iii).

137. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has lost wages, salary, employment benefits, and other compensation recoverable under 29 U.S.C. § 2617(a)(1)(A)(i).

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including lost wages, salary, employment benefits, and other compensation, liquidated damages, equitable relief, including reinstatement or front pay, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**COUNT VIII**
**RETALIATION**
**IN VIOLATION OF THE FMLA**
**(*Plaintiff v. Defendant*)**

138. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

139. The FMLA prohibits employers from retaliating against employees who exercise their FMLA rights, and employers may not "use the taking of FMLA leave as a negative factor in

employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); *see* 29 U.S.C. § 2615(a).

140. To state a retaliation claim, a plaintiff must show that (1) she invoked her right to FMLA-qualifying leave; (2) she suffered an adverse employment decision; and (3) the adverse action was causally related to her invocation of rights. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). A plaintiff may proceed on a mixed-motive theory under 29 C.F.R. § 825.220(c). *Egan v. Del. River Port Auth.*, 851 F.3d 263, 272–74 (3d Cir. 2017).

141. Ms. Haigler invoked her rights under the FMLA when she requested leave on February 4, 2025, and when she opposed and challenged the "key employee" designation on February 26, 2025.

142. HomeCentris terminated Ms. Haigler's employment on March 6, 2025 — three (3) days after correcting the "key employee" designation, two (2) days after Ms. Haigler told Mr. Ward she would coordinate her remaining days until her FMLA leave began, and eight (8) days before her leave was to begin.

143. The close temporal proximity between Ms. Haigler's exercise of her FMLA rights and her termination, Ms. Maddox's statements that she did not believe Ms. Haigler would return and her request that Ms. Haigler train her replacement, HomeCentris's plan to obtain a replacement for Ms. Haigler beginning March 3, 2025, the absence of any prior discipline in more than two (2) years of employment, and the fact that HomeCentris paid Ms. Haigler for the very days it claims she abandoned her job together establish that HomeCentris terminated Ms. Haigler because she invoked her FMLA rights.

144. At a minimum, HomeCentris used Ms. Haigler's request for FMLA leave as a negative factor in its decision to terminate her employment, in violation of 29 U.S.C. § 2615(a) and 29 C.F.R. § 825.220(c).

145. HomeCentris did not act in good faith or with reasonable grounds to believe its conduct was lawful, entitling Ms. Haigler to liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(iii).

146. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has lost wages, salary, employment benefits, and other compensation recoverable under 29 U.S.C. § 2617(a)(1)(A)(i).

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including lost wages, salary, employment benefits, and other compensation, liquidated damages, equitable relief, including reinstatement or front pay, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

## COUNT IX
## SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE PHRA
**(*Plaintiff v. Defendant*)**

147. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

148. The PHRA makes it an unlawful discriminatory practice for an employer, because of the sex of any individual, to discharge or otherwise discriminate against that individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment. 43 P.S. § 955(a).

149. Claims under the PHRA are interpreted coextensively with Title VII claims. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).

150. For the reasons set forth in Counts I and III, HomeCentris subjected Ms. Haigler to a hostile work environment because of her sex, failed to take prompt and adequate remedial action despite its knowledge of the harassment, and discharged her because of her sex, in violation of 43 P.S. § 955(a).

151. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has suffered damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and damage to her professional reputation, all in the past, present, and future.

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including back pay, front pay, compensatory damages, injunctive and equitable relief, including reinstatement and correction of her personnel file, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

## COUNT X
## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE PHRA
## (*Plaintiff v. Defendant*)

152. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

153. The PHRA makes it an unlawful discriminatory practice for an employer, because of the non-job-related handicap or disability of any individual, to discharge or otherwise

discriminate against that individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment, if the individual is the best able and most competent to perform the services required. 43 P.S. § 955(a).

154. Disability claims under the PHRA are generally interpreted consistently with the ADA. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

155. Ms. Haigler is a person with a non-job-related handicap or disability within the meaning of the PHRA who was able to perform the essential functions of her position with or without reasonable accommodation.

156. For the reasons set forth in Counts IV and V, HomeCentris discriminated against Ms. Haigler because of her disability, failed to provide her a reasonable accommodation, and failed to engage in a good-faith interactive process, in violation of 43 P.S. § 955(a).

157. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has suffered damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, and inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including back pay, front pay, compensatory damages, injunctive and equitable relief, including reinstatement and correction of her personnel file, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**<u>COUNT XI</u>**
**RETALIATION**
**IN VIOLATION OF THE PHRA**
**(*Plaintiff v. Defendant*)**

158. Ms. Haigler incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

159. The PHRA makes it an unlawful discriminatory practice for any person or employer to discriminate in any manner against any individual because such individual has opposed any practice forbidden by the PHRA. 43 P.S. § 955(d).

160. Retaliation claims under the PHRA are analyzed under the same framework as retaliation claims under Title VII and the ADA. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192–93 (3d Cir. 2015).

161. Ms. Haigler opposed practices forbidden by the PHRA when she complained of sex-based harassment to HomeCentris management, requested accommodation of her disability, and reported Ms. Maddox's gendered remarks, as set forth in Counts II and VI.

162. HomeCentris retaliated against Ms. Haigler for that protected activity by downgrading her performance evaluation, denying her a merit increase, designating her a "key employee," and terminating her employment, in violation of 43 P.S. § 955(d).

163. As a direct and proximate result of HomeCentris's conduct, Ms. Haigler has suffered damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and damage to her professional reputation, all in the past, present, and future.

WHEREFORE, Plaintiff, Imani Haigler, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant HomeCentris Pennsylvania, LLC d/b/a HomeCentris Healthcare, including back pay, front pay, compensatory damages, injunctive and

equitable relief, including reinstatement and correction of her personnel file, pre- and post-judgment interest, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

Date: November 4, 2026

By: */s/ Justin M. Bahorich*

Justin M. Bahorich, Esq.
Pa. I.D. No. 329207
HKM Employment Attorneys LLP
220 Grant Street, Suite 401
Pittsburgh, PA 15219
(412) 310-2737
jbahorich@hkm.com

Stephanie L. Solomon, Esq.
Pa. I.D. No. 208056
HKM Employment Attorneys LLP
220 Grant Street, Suite 401
Pittsburgh, PA 15219
(412) 760-7802
ssolomon@hkm.com

*Counsel for Plaintiff, Imani Haigler*